UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| USAA LIFE INSURANCE COMPANY, a Texas corporation,<br>              Plaintiff,<br>    v.<br>LORI L. DUNN BENVENUTO and KATHERINE ST. CLAIR, mother, guardian and next friend of E.A.B. and H.M.B.,<br>              Defendants.<br>------------------------------------------------------<br>KATHERINE ST. CLAIR, mother, guardian and next friend of E.A.B. and H.M.B.,<br>              Cross-Plaintiff,<br>    v.<br>LORI L. DUNN BENVENUTO,<br>              Cross-Defendant. | Case No. 13 CV 660<br><br>Judge Joan B. Gottschall |

**MEMORANDUM OPINION & ORDER**

Two insurance companies, USAA and MetLife, filed complaints for interpleader against Katherine St. Clair and Lori Dunn Benvenuto, both of whom made claims to life insurance policies that the companies issued to Paul Benvenuto. USAA and MetLife deposited the proceeds of the policies with the court and have been dismissed as parties in this case. Katherine then filed a three-count cross-complaint against Lori. The first count relates to the USAA policy, the second to the MetLife policy, and the third to Lori's personal assets.

Now before the court are Katherine's motion for summary judgment on Count I and Lori's motion to dismiss Counts II and III. For the reasons explained below, Katherine's motion

for summary judgment is granted insofar as it seeks a declaratory judgment and imposition of a constructive trust for the benefit of her children. Lori's motion to dismiss is denied.

## I. BACKGROUND

Paul Benvenuto, a federal employee, was married to Katherine St. Clair, with whom he had two children. In 2009, Paul and Katherine divorced. The divorce decree ordered Paul to maintain a life insurance policy in the amount of $500,000 for the benefit of his children until they graduated from college. Paul maintained two life insurance policies: a USAA policy for $250,000, and a MetLife policy for $812,000. The decree also required Katherine and Paul to maintain a joint savings account to pay for their children's college education.

Paul died in October 2012. Before his death, Paul changed the beneficiary designations on his USAA life insurance policy from his children to his second wife, Lori Dunn Benvenuto. He also designated Lori as the beneficiary of his MetLife policy and withdrew half of the money from the joint savings account.

## II. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate when the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2009). "[A] factual dispute is 'genuine' only if a reasonable jury could find for either party." *SMS Demag Aktiengesellschaft v. Material Scis. Corp.*, 565 F.3d 365, 368 (7th Cir. 2009). The court ruling on the motion construes all facts and makes all reasonable inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is warranted when the

nonmoving party cannot establish an essential element of its case on which it will bear the burden of proof at trial. *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012).

## B. Motion to Dismiss

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies this pleading standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56; *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[P]laintiff must give enough details about the subject-matter of the case to present a story that holds together."). For purposes of the motion to dismiss, the court takes all facts alleged by the plaintiff as true and draws all reasonable inferences from those facts in the plaintiff's favor, although conclusory allegations that merely recite the elements of a claim are not entitled to this presumption of truth. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

## III. ANALYSIS

### A. Katherine's Motion for Summary Judgment on Count I

In Count I, Katherine seeks (1) a declaration that her children have an equitable right to the proceeds of the USAA policy that is superior to any other claimant's right and (2) the imposition of a constructive trust on those proceeds for the benefit of her children.

Lori does not dispute that Katherine's children have an equitable right to the USAA proceeds. Under settled Illinois law, "When marital settlement agreements require an insured to maintain life insurance for the benefit of a particular beneficiary, that beneficiary has an enforceable equitable right to the proceeds of the insurance policies against any other named beneficiary except one with a superior equitable right." *In re Schwass*, 467 N.E.2d 957, 959 (Ill.

3

App. Ct. 1984).  Nor does Lori argue that she has a superior equitable right to the proceeds. Indeed, she now "disclaim[s] any and all interest she may have in the proceeds of the policy of life insurance issued by USAA."  (ECF No. 76, ¶ 2.)

It is also settled under Illinois law that when a beneficiary possesses an equitable right to life insurance proceeds because of a marital settlement agreement, the imposition of a constructive trust on the insurance proceeds is an appropriate remedy to enforce the beneficiary's equitable right.  *IDS Life Ins. Co. v. Sellards*, 527 N.E.2d 426, 428 (Ill. App. Ct. 1988).  Again, Lori does not dispute this.  Thus, under the undisputed facts of this case, Katherine is entitled to the relief that she seeks as a matter of law.

Lori agues, however, that because she has now disclaimed any interest she may have in the USAA proceeds, the court should not grant Katherine's motion for summary judgment, but instead "deny [it] as moot."  (ECF No. 76, ¶ 4.)  It is unclear whether Lori means to argue that the motion is "moot" in the sense that it "has no practical significance," or in the sense that the court now lacks jurisdiction under 28 U.S.C. § 1335, which grants district courts jurisdiction over interpleader actions only where the claimants are "adverse."  Regardless of which argument Lori intends to make, they both fail.

First, the motion still has practical significance.  The motion does not seek a declaration about Lori's right to the USAA proceeds, but rather a declaration about Katherine's children's right to those proceeds.  Granting the motion will entitle Katherine's children to the benefit of the proceeds, while denying it will leave them in limbo.

Second, with respect to the jurisdictional argument, "it is well settled that 'interpleader jurisdiction is determined at the time suit is filed and subsequent events do not divest the court of jurisdiction once properly acquired.'"  *Gen. Ry. Signal Co. v. Corcoran*, No. 89 C 9360, 1992

4

WL 220604, at *4 (N.D. Ill. Sept. 4, 1992) (quoting *Walker v. Pritzker*, 705 F.2d 942, 944 (7th Cir. 1983)). In *Walker*, the interpleader plaintiff held a $400,000 deposit paid by the buyer in a real estate sales contract. *Walker*, 705 F.2d at 943. At the time the complaint was filed, both the buyer and the seller made claims to the deposit. *Id.* After the district court found that it had jurisdiction, the buyer disclaimed any claim it had against the plaintiff. *Id.* The buyer then moved to dismiss the complaint for lack of jurisdiction, which the district court denied. *Id.* The Seventh Circuit affirmed the district court's denial of the motion to dismiss, holding that the buyer's disclaimer "came too late to affect the jurisdiction of the court." *Id.* at 944.

Similarly here, the court has jurisdiction because at the time the suit was filed, both Lori and Katherine asserted claims against the USAA proceeds. Lori's disclaimer came too late, and so under *Walker* there is no jurisdictional impediment to granting Katherine's motion for summary judgment now.

Katherine's motion for summary judgment on Count I is granted insofar as it seeks a declaratory judgment and imposition of a constructive trust. The court will enter an order declaring that under Illinois law, Katherine's children have an equitable right to the proceeds of the USAA policy that is superior to any other claimant's right. The court will also impose a constructive trust on the proceeds for the benefit of the children. If the parties can agree on a proposed order, they should jointly submit one to the court by September 23, 2014. If they cannot agree, they should inform the court why they disagree in writing by that same date.

In addition to seeking a declaratory judgment and constructive trust, Count I requests that the court enter an order "[g]ranting judgment in favor of Katherine against any insurance proceeds payable on the life of Paul for reasonable attorney's fees and costs incurred in the prosecution of this claim, pursuant to the provisions of Article XIV of the Settlement

Agreement." (Compl. at 5, ECF No. 48.) Article XIV, however, states that "[e]ach party shall be responsible for payment of his or her own attorneys' fees." (ECF No. 12-1.) The court thus fails to see how Katherine is entitled to attorneys' fees pursuant to Article XIV.

## B. Lori's Motion to Dismiss Counts II and III

### 1. Count II

In Count II, Katherine seeks (1) a declaration that her children have an equitable right to up to $500,000 of the proceeds of the MetLife policy and (2) the imposition of a constructive trust on those proceeds for the benefit of her children. The MetLife policy was issued to Paul pursuant to the Federal Employees Group Life Insurance Act, 5 U.S.C. §§ 8701-16 (FEGLIA). Lori moves to dismiss Count II, arguing that under FEGLIA, the proceeds of the MetLife policy must be disbursed to Lori. Because FEGLIA preempts the state-law remedies Katherine seeks in Count II, Lori argues, the count fails to state a claim on which relief can be granted.

Congress enacted FEGLIA to provide group life insurance to federal employees. *Hillman v. Maretta*, -- U.S. --, 133 S. Ct. 1943, 1947 (2013). FEGLIA provides that upon an employee's death, life insurance benefits are to be paid in accordance with a specified "order of precedence." 5 U.S.C. § 8705(a). Section 8705(a) of FEGLIA enumerates the order of precedence:

> (a) Except as provided in subsection (e), the amount of group life insurance . . . in force on an employee at the date of his death shall be paid, on the establishment of a valid claim, to the person or persons surviving at the date of his death, in the following order of precedence:
>
> > First, to the beneficiary or beneficiaries designated by the employee in a signed and witnessed writing received before death in the employing office . . . .

5 U.S.C. § 8705(a). The § 8705(e) "exception" states as follows:

> (e)(1) Any amount which would otherwise be paid to a person determined under the order of precedence named by subsection (a) shall be paid (in whole or in

part) by the Office to another person if and to the extent expressly provided for in the terms of any court decree of divorce, annulment, or legal separation, or the terms of any court order or court-approved property settlement agreement incident to any court decree of divorce, annulment, or legal separation.

(2) For purposes of this subsection, a decree, order, or agreement referred to in paragraph (1) shall not be effective unless it is received, before the date of the covered employee's death, by the employing agency or, if the employee has separated from service, by the Office.

5 U.S.C. § 8705(e)(1) & (2).

Section 8705(e)(4) authorizes the Office of Personnel Management (OPM) to promulgate regulations to implement § 8705(e). Pursuant to that authority, OPM promulgated 5 C.F.R. § 870.801-.802. As relevant here, the regulations provide:

(d)(1) If there is a court order in effect naming a specific person or persons to receive life insurance benefits upon the death of an insured individual, [benefits] will be paid to the person or persons named in the court order, instead of according to the order of precedence.

(2) To qualify a person for such payment, a certified copy of the court order must be received by the appropriate office on or after July 22, 1998, and before the death of the insured.

5 C.F.R. § 870.801(d)(1) & (2).

Thus, under FEGLIA, when a federal employee with a FEGLIA life insurance policy dies, the beneficiary designated by the employee is to be paid first, unless a court order provides otherwise. To be effective, however, a certified copy of the court order must be received by the employer before the death of the insured.

FEGLIA includes an express preemption provision. That provision states that "[t]he provisions of any contract under [FEGLIA] which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any law of any State . . . , which relates to group life insurance to the extent that the law or regulation is inconsistent with contractual provisions." 5 U.S.C. § 8709(d)(1). The Supreme Court has held that FEGLIA preempts rules of state law that automatically assign an interest in the proceeds of a

7

FEGLIA policy to a person other than the named beneficiary or grants that person a right to recover such proceeds. *Hillman*, 133 S. Ct. at 1949.

The issue before the court is whether Lori must be paid first under FEGLIA as the named beneficiary of the FEGLIA policy or whether Katherine's children must be paid first because she submitted a certified copy of the divorce decree to Paul's employer.

The complaint alleges that "[i]n February or March of 2011, which was prior to Paul's death, Katherine submitted a certified copy of the MSA [the marital settlement agreement] to the Federal Bureau of Investigation ('FBI'), which employed Paul. This was pursuant to an FBI investigation of Paul." (Compl. ¶ 19.) Lori argues that this allegation is insufficient to state a claim on which relief can be granted because "federal law, as embodied in 5 C.F.R. § 870.801(d)(1), required that [Katherine] provide a certified copy of the DuPage Decree, not just the Marital Settlement Agreement, to the appropriate office of the FBI, not an FBI agent investigating Paul." (ECF No. 51, at 8.)

In her response to the motion to dismiss, Katherine states that she submitted a certified copy of the divorce decree to the FBI. She notes that the marital settlement agreement "was a part of the entire document that was the court-ordered Judgment of Dissolution of Marriage" and that "in giving the [marital settlement agreement] to the FBI, the Order of Judgment was necessarily given as well." (ECF No. 63, at 6.) She attaches a copy of the divorce decree and marital settlement agreement to her response, though she acknowledges that it is not an "exact duplicate" of the certified copy that she says she gave to the FBI. (*Id.*)

In reply, Lori notes that MetLife alleged in its complaint for interpleader that "[t]he U.S. Department of Justice Federal Bureau of Investigation notified MetLife that it had not received copies of any Court Orders, Divorce Decrees, or Settlement Orders prior to the Insured's Death."

8

(Compl. ¶ 17, ECF No. 22.) Thus, she concludes, "[t]he plain fact is the FBI did not receive a certified copy of the DuPage Decree." (ECF No. 71, at 4.)

But, of course, in considering a motion to dismiss, the court must take all of the facts alleged by the plaintiff as true and draw all reasonable inferences in the plaintiff's favor. Katherine alleges that she "submitted a certified copy of the MSA to the Federal Bureau of Investigation ("FBI"), which employed Paul." (Compl. ¶ 19.) She explains in her response brief that she submitted both the marital settlement agreement and the divorce decree to the FBI. Because this fact is consistent with the allegations in her complaint, the court may consider it. *See Help At Home Inc. v. Med. Capital, L.L.C.*, 260 F.3d 748, 752 (7th Cir. 2001) ("A plaintiff need not put all of the essential facts in the complaint; he may add them by affidavit or brief in order to defeat a motion to dismiss if the facts are consistent with the allegations of the complaint." (internal quotation marks omitted)).

Additionally, it would be inappropriate for the court, in considering the motion to dismiss, to draw the inference that Katherine submitted the marital settlement agreement and divorce decree to an "FBI agent investigating Paul" rather than "the appropriate office of the FBI." (ECF No. 51, at 8.) The complaint alleges that Katherine submitted the MSA "to the Federal Bureau of Investigation . . . pursuant to an FBI investigation of Paul." (Compl. ¶ 19.) It is reasonable to infer from the complaint that Katherine submitted the decree to the appropriate office of the FBI. Thus, the court must draw that inference in Katherine's favor.

The motion to dismiss Count II is denied.

**2. Count III**

In Count III, Katherine seeks (1) a declaration that her children have an equitable right to funds that Paul withdrew from an account for the children's benefit and (2) the imposition of a

constructive trust against Lori's assets in the amount of $9,995.28. Lori moves to dismiss Count III, arguing that it fails to state a claim on which relief can be granted.

Although the complaint does not specify a cause of action for Count III, Katherine's response to the motion to dismiss relies on cases involving conversion claims. (*See* Resp. at 8-9, ECF No. 63 (citing *Groot Indus., Inc. v. Cordell*, No. 08 C 4907, 2009 WL 3852455 (N.D. Ill. Nov. 17, 2009), and *Schwartz v. Schwartz*, 365 N.Y.S.2d 589 (N.Y. App. Term 1975)). The court will therefore analyze Count III as a conversion claim.

To survive a motion to dismiss a conversion claim, a plaintiff must allege "(1) an unauthorized and wrongful assumption of control, dominion, or ownership by defendant over its property; (2) its right to the property; and (3) its right to immediate possession of the property, absolutely and unconditionally." *Centerline Equip. Corp. v. Banner Pers. Serv., Inc.*, 545 F. Supp. 2d 768, 781 (N.D. Ill. 2008) (citing *Gen. Motors Corp. v. Douglass*, 565 N.E.2d 93, 96 (Ill. App. Ct. 1990)).

Here, the complaint alleges that Katherine and Paul were joint custodians of a college savings account for their children. It alleges that under the terms of the marital settlement agreement, the funds in the savings account were to be used only for the children's college expenses. It further alleges that in January 2010, Paul wrongfully withdrew $9,995.28 from the account, which represented half of the funds in the account at the time. Finally, it alleges that Paul used the funds for his benefit and for the benefit of Lori.

Lori argues that these allegations are insufficient to state a claim on which relief can be granted because "the allegation regarding use of the funds is conclusory and fails to offer any factual basis to support Katherine's claim that Lori benefitted from Paul's alleged withdrawal of

those funds or why Lori should be accountable for Paul's alleged violation of the MSA." (ECF No. 51, at 11.) The court finds this argument to be unavailing.

First, the court disagrees that the allegation that Paul used the funds for his and Lori's benefit is "conclusory." It is supported by allegations in the complaint that Paul changed the beneficiary designation on the USAA policy from his children to Lori, that he withdrew precisely half of the funds from the college savings account, and that he did so after becoming romantically involved with Lori. It is reasonable to infer from these allegations that Paul used or intended to use the funds for his and Lori's benefit, rather than to save the money for his children's college expenses.

Second, to support her contention that Lori may be held liable for Paul's alleged violation of the marital settlement agreement, Katherine relies on *Groot*, 2009 WL 3852455, at *7. In *Groot*, the plaintiff alleged that its former employee, Robert Cordell, "pocketed approximately $500,000 from cash transactions and cooked the company's books in an effort to cover his tracks." *Id.* at *1. The plaintiff also alleged that Robin Cordell (Robert's wife) was jointly and severally liable "as a cosignatory on the bank account into which the converted funds were deposited." *Id.*

In evaluating Robin Cordell's liability for conversion, the court noted that "the law in Illinois seems perfectly clear that a defendant who is in possession or control of another's wrongfully converted property—for instance, by being a cosignatory on the account in which it is held—is liable for conversion." *Id.* at *7 (citing *Fortech, L.L.C. v. R.W. Dunteman Co.*, 852 N.E.2d 451 (Ill. App. Ct. 2006)). Liability for conversion "does not . . . require that a defendant use the wrongfully held property to his or her own advantage" or that the defendant "knew of [the wrongful] activities." *Groot*, 2009 WL 3852455, at *7 (citing *Fortech*, 852 N.E.2d at 457),

11

and *Cirrincione v. Johnson*, 703 N.E.2d 67, 70 (Ill. 1998)). Because Robin Cordell was a cosignatory of the checking account into which the stolen funds were deposited, the court held that she was jointly and severally liable for the money her husband stole from his employer. *Groot*, 2009 WL 3852455, at *7.

The court agrees with Katherine that under *Groot* and the Illinois authorities cited in that decision, Katherine may pursue a claim for conversion against Lori. Lori attempts to distinguish *Groot* by noting that "nowhere in Count III is there an allegation that Lori had dominion or control over the . . . college funds, or that they were deposited to an account that she controlled or was able to access." (ECF No. 71-5.) But again, on a motion to dismiss the court must draw reasonable inferences in favor of the plaintiff. If discovery reveals that Paul kept the funds he withdrew in a separate account to which Lori has no access, Lori will have a strong argument that she cannot be held liable for conversion. But for now, it is a reasonable inference that Paul took the money from the account so that he and Lori could use it for themselves.

The motion to dismiss Count III is denied.

## IV. CONCLUSION

Katherine's motion for summary judgment is granted insofar as it seeks a declaratory judgment and imposition of a constructive trust for the benefit of her children. If the parties can agree on a proposed order, they should jointly submit one to the court by September 23, 2014. If they cannot agree, they should inform the court why they disagree in writing by that same date. Lori's motion to dismiss is denied. A status hearing is set for September 24, 2014, at 9:30 a.m.

ENTER:

　　　　　/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: September 3, 2014