UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| USAA LIFE INSURANCE COMPANY, a Texas corporation, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 13-cv-660 ) ) Judge Joan B. Gottschall |
| LORI L. DUNN BENVENUTO, *et al.*, | ) ) |
| Defendants. | ) ) ) |
| ------------------------------------------------- | ) ) |
| KATHERINE ST. CLAIR mother, guardian and next friend of E.A.B. and H.M.B. | ) ) ) |
| Cross-Plaintiff, and Interpleader Defendant, | ) ) ) |
| v. | ) ) |
| LORI L. DUNN BENVENUTO, | ) ) |
| Cross-Defendant, and Interpleader Defendant. | ) ) ) ) |

**MEMORANDUM OPINION & ORDER**

Before the court is the Motion for Partial Summary Judgment of Cross-Defendant/Interpleader Defendant Lori L. Benvenuto ("Lori") on Count II of the Amended Cross-Complaint filed by Cross-Plaintiff/Interpleader Defendant Katherine St. Clair ("Katherine"). [ECF No. 96.] For the following reasons, Lori's motion is denied.

**I.     BACKGROUND**

The court takes the following facts from the parties' Local Rule 56.1 statements and exhibits. The facts are undisputed unless expressly noted.

Prior to his death on October 11, 2012, Paul Benvenuto ("Paul") was employed by the Department of Justice, Federal Bureau of Investigation ("FBI") as a special agent assigned to its Chicago Division. [Lori Benvenuto 56.1 Statement of Facts ("SOF") ¶¶ 13, 30, ECF No. 107.] As an employee of the Federal Government, Paul was entitled to participate in the Federal Employees' Group Life Insurance ("FEGLI") Program. [*Id.* ¶ 14.] Paul initially waived coverage at the time of his hire in 1997, but elected life insurance coverage in an amount equal to five times his salary during an open enrollment period in June 1999. [*Id.* ¶ 14, 16.]

Cross-Defendant/Interpleader Defendant Lori is Paul's surviving spouse. Paul was previously married to Cross-Plaintiff/Interpleader Defendant Katherine. Paul and Katherine have two children, E.A.B. and H.M.B. On April 6, 2009, a state court in DuPage County, Illinois entered a Judgment for Dissolution of Marriage ("divorce decree") which dissolved the marriage of Paul and Katherine. [*Id.* ¶ 19.] Pursuant to the terms of a Marriage Settlement Agreement ("MSA") dated January 20, 2009 and incorporated by reference into the divorce decree, Paul was to maintain insurance on his life in an amount not less than $500,000. [*Id.* ¶ 20.] Paul was also required to designate E.A.B. and H.M.B. as beneficiaries of his life insurance policy or policies. [*Id.*] In accordance with the MSA, Paul designated E.A.B. and H.M.B. as 50/50 beneficiaries of his FEGLI policy. [*Id.* ¶ 21.] The FEGLI Designation of Beneficiary form indicates that it was received by the FBI human resources office in Washington, DC on January 30, 2009. [*Id.*]

On April 14, 2009, Paul provided the office of the Chicago Division of the FBI with a change in marital status form FD-207 and an unsigned and uncertified copy of the divorce

decree. [*Id.* ¶ 22.] Lori states, and the record confirms, that Paul did not provide his office with a copy of the MSA. On October 16, 2009, Paul executed another FEGLI Designation of Beneficiary form naming the Paul M. Benvenuto Trust, dated 10/15/2009 ("PMB Trust") as the beneficiary of his FEGLI policy. [*Id.* ¶ 24.] Paul and Lori married on January 4, 2012. Shortly thereafter, on January 6, 2012, Paul filed a third and final Designation of Beneficiary form with the FBI. The form identified Lori as the primary beneficiary of the FEGLI policy and the PMB Trust as the successor beneficiary. [*Id.* ¶¶ 25-26.]

On February 13, 2012, Special Agent Lynette Schroeter ("SA Schroeter") interviewed Katherine as part of the FBI's periodic reinvestigation of Paul. During the interview, Katherine told SA Schroeter that she and Paul were divorced in 2009 in DuPage County, that the records of the divorce were sealed, and she gave SA Schroeter the case number. [*Id.* ¶ 27.] After her interview with Katherine, SA Schroeter prepared a Report of Investigation which indicated that Katherine advised that she could "provide written documentation to verify any of the information that she…supplied" during the interview. [*Id.* ¶ 28.] There was no document referred to or attached to SA Schroeter's report. [*Id.*] However, Katherine avers in an affidavit attached to her response in opposition to Lori's motion for partial summary judgment that she provided SA Schroeter with a certified copy of the divorce decree and MSA. [Resp. to Benvenuto SOF, Ex. A, St. Clair Affidavit, ¶ 5, ECF No. 107-2.] SA Schroeter interviewed Katherine once again on June 1, 2012 as part of the FBI's reinvestigation program. There was no discussion of the divorce decree or MSA or Paul's obligations thereunder. [*Id.* ¶ 29.]

Paul's FBI personnel file contains no certified copy of the divorce decree or MSA. Deborah Crum, Unit Chief with the Discovery Processing Unit with the FBI, averred in an affidavit that the FBI searched its internal records and discovered that it was not in possession of

a certified divorce decree or MSA. [MSJ, Ex. A, Crum Affidavit, pp. 1-3, ECF No. 97.] [Benvenuto SOF, Ex. A, Crum Affidavit, pp. 1-3; Reply, Ex. E., 12/18/15 FBI Letter to St. Clair, ECF No. 108.]

As a result of Paul's death on October 11, 2012, the life insurance benefits from his FEGLI policy, in the total amount of $812,000, became payable. [*Id.* ¶ 31.] On October 28, 2012, Katherine, as guardian of E.A.B. and H.M.B., submitted claims for the FEGLI benefits on their behalf based on the language of the MSA requiring that Paul maintain life insurance naming his children as beneficiaries. Approximately one month later, on November 23, 2012, Lori submitted a claim for the FEGLI benefits based on her designation as a beneficiary.

On January 28, 2013, USAA Life Insurance Company ("USAA") filed the instant interpleader action against Katherine and Lori requesting that this court adjudicate their competing interests in a $252,397.26 life insurance policy it had issued on the life of Paul. [Complaint for Interpleader, ECF No. 1.] The policy issued by USAA is separate from the FEGLI policy at issue in this case. Thereafter, Katherine filed a Cross-Claim against Lori and a third-party complaint against Metropolitan Life Insurance Company ("MetLife") to recover $500,000 from the proceeds of the FEGLI policy on Paul's life issued by MetLife. The FEGLI policy was issued by MetLife pursuant to the Federal Employees' Group Life Insurance Act, 5 U.S.C. § 8701 *et seq*. ("FEGLIA"). [Cross-Claim, ECF No. 12.] Pursuant to this court's orders of March 26, 2013 and July 2, 2013, USAA and MetLife deposited $252,397.26 and $813,981.34, respectively, with the District Court's Registry. [3/26/13 Order, ECF No. 14; 7/2/13 Order, ECF No. 34.]

Ultimately, the $252,397.26 USAA policy proceeds were released to Katherine because of the language in the MSA requiring Paul to maintain life insurance on behalf of his two natural

4

children. [9/3/14 Order, ECF No. 83.] The USAA policy involved none of the precedence issues involved in the FEGLI policy.

Because Paul was required to maintain $500,000 of life insurance on behalf of E.A.B. and H.M.B., Katherine has, at most, an interest in $247,602.74 of the MetLife/FEGLI insurance proceeds. Accordingly, the court released $563,967.86 of the MetLife/FEGLI policy proceeds to Lori, the designated beneficiary of the FEGLI policy. [2/26/14 Oder, ECF No. 55.] $250,013.48 of the MetLife/FEGLI insurance proceeds remains deposited with the District Court Registry and is at issue in this case. Katherine argues that, pursuant to the divorce decree and MSA, she, on behalf of her children, is entitled to those proceeds. However, Lori argues that, as the designated beneficiary of Paul's FEGLI policy, she is entitled to the proceeds. Lori has filed the instant motion for partial summary judgment.

## II. LEGAL STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In determining whether a genuine issue of material fact exists, the Court construes the facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S.Ct. 2505. The

existence of a factual dispute alone is not sufficient to defeat a summary judgment motion; instead the non-moving party must present definite, competent evidence to rebut the summary judgment motion. *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004).

### III.     ANALYSIS

"Congress enacted FEGLIA to provide group life insurance to federal employees." *Hillman v. Maretta*, --- U.S. ---, 133 S. Ct. 1943, 1947 (2013). FEGLIA provides that upon an employee's death, life insurance benefits are to be paid in accordance with a specified "order of precedence." 5 U.S.C. § 8705(a). Section 8705(a) of FEGLIA enumerates the order of precedence:

> (a) Except as provided in subsection (e), the amount of group life insurance . . . in force on an employee at the date of his death shall be paid, on the establishment of a valid claim, to the person or persons surviving at the date of his death, in the following order of precedence:
>
> First, to the beneficiary or beneficiaries designated by the employee in a signed and witnessed writing received before death in the employing office…

5 U.S.C. § 8705(a). "[W]here a beneficiary has been duly named, the insurance proceeds she is owed under FEGLIA cannot be allocated to another person by operation of state law." *Hillman*, --- U.S. ---, 133 S.Ct. at 1953. In *Metropolitan Life Ins. Co. v. Christ*, 979 F.2d 575 (7th Cir. 1992), the court was confronted with circumstances similar to those in this case. There, the Seventh Circuit held that state court divorce decrees and theories of constructive trust directly conflict with the contract provisions of FEGLIA policies and, therefore, cannot serve as a basis to avoid the order of precedence mandated by § 8705(a) cited above. The Seventh Circuit observed that the "language, structure, and legislative history of FEGLIA's order of precedence and beneficiary designation…establishes an 'inflexible rule that the [designated] beneficiary…would receive the policy proceeds, regardless of other documents or the equities in

6

a particular case.'" *Id.* at 578-89 (quoting *O'Neal v. Gonzalez*, 839 F.2d 1437, 1440 (11th Cir. 1988)).

Recognizing the potential conflicts that can be created by FEGLIA's "order of precedence" language, and in an effort to acknowledge the rights of former spouses and children under state court divorce orders, decrees, and marital settlement agreements, Congress amended FEGLIA by adding § 8705(e), which provides the following:

> (e)(1) Any amount which would otherwise be paid to a person determined under the order of precedence named by subsection (a) shall be paid (in whole or in part) by the Office to another person if and to the extent expressly provided for in the terms of any court decree of divorce, annulment, or legal separation, or the terms of any court order or court-approved property settlement agreement incident to any court decree of divorce, annulment, or legal separation.
>
> (2) For purposes of this subsection, a decree, order, or agreement referred to in paragraph (1) shall not be effective unless it is received, before the date of the covered employee's death, by the employing agency or, if the employee has separated from service, by the Office.

5 U.S.C. § 8705(e)(1) & (2).

Section 8705(e)(4) authorizes the Office of Personnel Management (OPM) to promulgate regulations to implement § 8705(e). Pursuant to that authority, OPM promulgated 5 C.F.R. § 870.801-802. As relevant here, the regulations provide the following:

> (d)(1) If there is a court order in effect naming a specific person or persons to receive life insurance benefits upon the death of an insured individual, [benefits] will be paid to the person or persons named in the court order, instead of according to the order of precedence.
>
> (2) To qualify a person for such payment, a certified copy of the court order must be received by the appropriate office on or after July 22, 1998, and before the death of the insured.

5 C.F.R. § 870.801(d)(1) & (2).

Thus, under FEGLIA, when a federal employee with a FEGLIA life insurance policy dies, the beneficiary designated by the employee is to be paid first, unless a court order provides

7

otherwise. To be effective, however, a "certified copy of the court order" must be received by the employer before the death of the insured.

With that statutory and regulatory framework in mind, the court now turns to the arguments advanced by the parties. The parties argue at great length over two issues: (1) whether Katherine's alleged delivery of a certified copy of the divorce decree and MSA to SA Schroeter was an acceptable manner of submission under 5 U.S.C. § 8705(e)(2); and (2) whether the divorce decree or the MSA needed to reference the FEGLI policy in order to be effective.

The court rejects Lori's argument that the divorce decree or MSA is required to specifically reference the FEGLI policy. First, there is nothing in the plain language of the statute that requires that the divorce decree specifically mention the FEGLI policy. In fact, requiring parties to specifically identify a FEGLI policy in a divorce decree would have the potential to frustrate the purposes of § 8705(e). For example, if a person were to divorce his or her spouse and if, as part of the divorce settlement, that person was required to maintain life insurance for the benefit of his or her children, then that person's *subsequent* election of FEGLI benefits would fall outside the scope of § 8705(e); the divorce decree could not specifically identify the FEGLI policy as the policy did not exist at the time of the divorce. The only authority cited by Lori to support her argument that the MSA was required to specifically identify the FEGLI policy is an unreported case from the Eastern District of Tennessee. *Faris v. Long*, 2008 WL 2117243, *2 (E.D. Tenn. May 20, 2008). While the court notes the decision made in *Faris*, it is not binding upon this court and has also never been cited by any other case for the proposition put forth by Lori. Nor does it appear to depend on any statutory language.

An essential and unambiguous requirement of 5 C.F.R. § 870.801(d)(2) is that a "certified copy" of a court order be received by the appropriate office prior to the employee's

death. In her response to Lori's argument that she has been unable to prove that the FBI possessed or received a certified copy of the divorce decree or MSA prior to Paul's death, Katherine offers two pieces of evidence.

First, Katherine points to a fax allegedly sent by her divorce attorney, Margaret O'Connell, to the FBI on March 17, 2009. According to Katherine, O'Connell faxed a copy of the divorce decree, a 4-page document, and the MSA, a 26-page document[1] to the FBI. [Response, Ex. F, ECF No. 107-7.] However, only the divorce decree was found in the FBI's personnel file. [*Id.*]; [*see also* MSJ, Ex. C, ECF No. 97.] Whether or not Ms. O'Connell sent only the divorce decree or the divorce decree and the MSA is of no great consequence. It is undisputed that the divorce decree dissolving the marriage of Paul and Katherine was not entered until April 6, 2009—almost three weeks *after* O'Connell's alleged fax to the FBI. Accordingly, O'Connell could not have faxed a certified copy of the divorce decree on March 17, 2009 as it was not yet entered.

However, more significantly, Katherine avers she handed a certified copy of the divorce decree and MSA to SA Schroeter on February 13, 2009 and argues that if the FBI did not receive a certified copy of the divorce decree or MSA it is because SA Schroeter failed to deliver it to the proper parties. Lori argues that, even if Katherine tendered certified copies of the divorce decree and MSA to SA Schroeter, this form of service is improper. The court disagrees.

In support of her argument that delivery of a certified court order or MSA to SA Schroeter was an acceptable manner of submission, Katherine cites *Nixon v. U.S.*, 916 F.Supp.2d 855 (N.D. Ill. 2013). The plaintiff in *Nixon* was the sister of a United States Small Business Administration ("SBA") employee, Robert Conner ("Conner"). Conner owned a FEGLI life

---

[1] Katherine draws the court's attention to the "fax band" appearing at the top of Exhibit F and correctly states that 26 pages are missing from the transmitted fax. [Response, Ex. F, ECF No. 107-7.] However, there is no evidence that the fax was actually sent to or received by the FBI. The cover page is missing from the record.

insurance policy in the sum of $702,000. The plaintiff in *Nixon* alleged that Conner amended his designation of beneficiary form prior to his death. The plaintiff also alleged that Conner delivered the amended form to another SBA employee so that the employee could forward the form to the SBA Office of Human Capital Management in Denver, Colorado. However, the plaintiff alleged that the SBA employee who took control of Conner's amended form failed to deliver it to the office in Denver. As a result, the insurance company paid benefits as directed by Conner's earlier designation form. The court in *Nixon* held that government employees, like the SBA employee who received Conner's amended form, have a duty to maintain or forward beneficiary forms. *Id*. at 863-64. This conforms to basic agency principles. *Id.* at 863 ("Further, with respect to FEGLI, the Government acts as an agent for its employees, *see, e.g., Brinson v. Brinson,* 334 F.2d 155, 158 (4th Cir.1964), and that role gives rise to certain duties under the common law of agency. Illinois law holds, for example, that if a life insurance agent accepts an application for insurance, but fails to process it within a reasonable time, the agent is liable for harm caused by his negligence.") Therefore, if SA Schroeter actually received a certified copy of the court decree and MSA, Katherine satisfied § 8705(e)(1).[2]

Katherine's averment that she tendered a certified copy of the divorce decree and MSA to SA Schroeter creates a material factual dispute which a jury must decide. Although the FBI states that it could not locate a certified copy of the divorce decree or MSA in its records, this

---

[2] Katherine claims the FBI refused to make SA Schroeter available for a deposition. Because of the FBI's refusal to produce SA Schroeter for a deposition, Katherine claims that her testimony that she gave SA Schroeter a certified divorce decree and MSA has thus not been disproven and therefore leaves a genuine issue of material fact in dispute. First, the FBI did not refuse to make SA Schroeter available for a deposition. In its December 18, 2015 letter to Katherine, the FBI stated that the subpoena to depose SA Schroeter was unduly burdensome and the subpoena did not explain or specify how SA Schroeter's testimony would be relevant to the case. [*Id.*] Nevertheless, the FBI noted in the letter that it would be willing revisit its decision regarding whether to produce SA Schroeter if it was provided with information it requested in the letter, including the relevance of SA Schroeter's testimony. Katherine did not respond to the FBI's December 18, 2015 letter.

does not prove that Katherine never tendered the documents to SA Schroeter during their meeting on February 13, 2009.

## IV. CONCLUSION

For the reasons stated above, Lori Benvenuto's motion for partial summary judgment [96] is denied. Status is set for October 5, 2016 at 9:30 a.m.

Date: September 28, 2016 /s/

Joan B. Gottschall
United States District Judge